IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 03:11-CV-00381

| | |
|---|---|
| LATINO COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NORSAN CONSULTING AND MANAGEMENT, INC.,<br><br>    Defendant and<br>    Counterclaim Plaintiff,<br><br>v.<br><br>LATINO COMMUNICATIONS, LLC.<br><br>    Counterclaim Defendant. | **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

    Plaintiff Latino Communications, LLC ("Latino") attempts to bring claims for tortious interference and unfair trade practices against defendant Norsan Management, Inc. ("Norsan") on the theory that Norsan hired former employees of Latino who were subject to covenants not to compete. However, the covenants not to compete, which are attached to Latino's Complaint, are facially invalid under North Carolina law. In addition, Latino admits Norsan hired and employed these persons for the lawful motive of "advancing its own interest," which constitutes protected competitive behavior under North Carolina law. Moreover, Latino conspicuously fails to allege that Norsan knew any of the employees were subject to covenants not to compete at the time they were hired; instead it merely alleges that once informed of the existence of the covenants, Norsan "took no action to prevent the [employees'] contract breach" – implying that Norsan had a duty to fire the employees. Each of these deficiencies furnishes a separate and independent

basis for dismissal. Accordingly, the Complaint fails to state any cognizable claim for relief under applicable law. Norsan has therefore moved under Rule 12(b)(6) for entry of an order dismissing all of the claims asserted by Latino and offers this brief in support.

## I. ALLEGATIONS OF THE COMPLAINT

The Complaint alleges[1] that Latino is a North Carolina Limited Liability Company that publishes and distributes *Que Pasa*, a Spanish language newspaper in Charlotte. (Compl. ¶ 1). Defendant Norsan or a related entity publishes a competing Spanish language newspaper called *Hola Noticias*. (Compl. ¶ 2). Non-parties Carol Romero ("Romero"), Iliana Pauly ("Pauly"), and Rodrigo Martinez ("Martinez") were employees or independent contractors for Latino, and each individually decided to leave Latino's employ. (Compl. ¶¶ 8, 11, 13). Martinez resigned in October, 2010 (Compl. ¶ 8), and Pauly and Romero did not resign until May, 2011 (Compl. ¶¶ 12, 13). The Complaint further alleges that, while employed by Latino, each of the employees signed substantially identical agreements with provisions purporting to be covenants not to compete (the "Restrictive Covenants"), and summarily alleges that such agreements are valid and enforceable. (Compl. ¶ 5, 15). Martinez, Pauly and Romero are now employees of Norsan. (Compl. ¶¶ 8, 12, 13).

However, the Complaint does <u>not</u> allege the following:

- That Latino and Norsan have any agreement among themselves with respect to hiring employees or competing in the marketplace;
- That Norsan recruited any of the employees;
- That the employees left Latino at the same time due to an effort by Norsan to raid Latino's workforce;
- That Norsan was aware of the existence of the purported non-competes;
- That Norsan colluded with the employees to harm Latino;

---

[1] For purposes of this motion only, Defendant assumes the truth of the factual allegations in the Complaint.

- That Norsan deceived, dissembled, misrepresented, or took any covert action with respect to its hiring of these employees;
- That Norsan's hiring of the employees resulted in Norsan obtaining business from any customer of Latino with whom Norsan was not already doing business.

Instead, the Complaint admits that at least one of Norsan's purposes in hiring the former employees was "advancing [Norsan's] own interest[s]," (Compl. ¶ 17), which justifies Norsan's actions as a matter of law. (*See infra* at 7.) Nonetheless, Latino attempts to assert tortious interference and unfair trade practice claims against Norsan. Apparently, Latino's position is that, once put on notice of the purported restrictive covenants, Norsan should have fired all three employees. The law of North Carolina imposes no such duty on Norsan.

## II. ARGUMENT

Latino's claims cannot be sustained and therefore must be dismissed for two separate and independent reasons. First, the covenants not to compete attached to the Complaint are invalid on their face, so as a matter of law the covenants cannot be the basis for a tortious interference claim or an unfair trade practice claim. Second, the Complaint admits, on its face, that Norsan had a valid purpose for hiring employees of Latino. This admission confirms that Norsan's actions were privileged or justified because it is a competitor of Latino – and that its actions thus cannot be a basis for tortious interference.

    A.    <u>The Restrictive Covenants are invalid; therefore Norsan could not have committed tortious interference</u>.

Latino's claims rely entirely on a flawed allegation ― that the "restrictive covenant agreements executed by [the employees] constitute valid enforceable contracts that are reasonably necessary to protect the legitimate business interests of Latino." (Compl. ¶ 15). To allege a tortious interference claim, the plaintiff must prove the existence of "a <u>valid</u> contract

between plaintiff and a third person which confers upon the plaintiff a contractual right…" *Beck v. City of Durham,* 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002) (emphasis added).

Each of the Restrictive Covenants provides in relevant part that an employee:

> …for a period of twelve months after his/her employment with the Employer is terminated....<u>will not</u>, whether as a principal or as agent, officer, director, employee, consultant, or otherwise, alone or in association with any other person, firm, corporation, or other business organization, <u>carry on or be engaged</u>, concerned or take part in, or render services to, or own any interest or share in the earnings of or invest in the stock, bonds or other securities of any person, firm, corporation or other business organization which is <u>engaged in the business conducted by the Employer</u> within a radius of [50 or 25 miles] of any office of the Employer to which the Employee was assigned."

*See* Martinez Restrictive Covenant, ¶ V.A. (Exh. A to Compl., emphasis added).

In addition, for the same twelve-month period, the Restrictive Covenants purport to prohibit an employee from providing "services that are competitive with the services offered by Employer to any customer the Employer has done business with during the twelve months preceding the termination of Employee's employment." This second restriction purports to apply "regardless of geographic location." *Id.* ¶ V.B.

These two provisions are the foundation of Latino's Complaint, but under long-standing North Carolina law, each provision is invalid and unenforceable. Deprived of its foundation, the Complaint thus fails to state a claim.

1. *A flat prohibition on employment by competitor is unenforceable under VisionAIR.* To start, the first provision quoted above purports to prohibit Latino's former employees from being associated in any way whatsoever with any company that is "engaged in the business conducted by" Latino. In *VisionAIR, Inc. v. James,* 167 N.C. App. 504, 509, 606 S.E.2d 359, 363 (2004), the North Carolina Court of Appeals invalidated a materially identical provision. As the Court of Appeals immediately recognized, such a provision "would prevent [a former employee] from

engaging in . . . work unrelated to that which he did for [the former employer]." *Id.* (emphasis added). Under *VisionAIR*, the analysis is open and shut, and needs no further elaboration. On its face, the covenant is invalid.

It bears noting that the covenant cannot be "cured" by being judicially rewritten. As the Fourth Circuit Court of Appeals has observed, "North Carolina has a very strict rule regarding blue penciling," which is the practice of judicially amending non-compete contracts to make them enforceable. *Broadway v. Seymour, Inc. v. Wyatt,* 1991 U.S. App. LEXIS 21736, *5 (4th Cir. 1991) (unpublished). "A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable." *Hartman v. W.H. Odell & Assoc., Inc.*, 117 N.C. App. 307, 317-18, 450 S.E.2d 912, 920 (1994) (emphasis added). In other words, a court may cross out terms that already exist. It "may not resurrect, in whole cloth, a covenant not to compete by erasing and replacing offending, but key, portions of a contract." *Professional Liability Consultants v. Todd*, 122 N.C. App. 212, 221, 468 S.E.2d 578, 584, *reversed and adopting reasoning of dissent*, 345 N.C. 176, 478 S.E.2d 201 (1996) (emphasis added); *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961) (in North Carolina, "[t]he court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions"); *Noe v. McDevitt*, 228 N.C. 242, 45 S.E.2d 121 (1947) (refusing to blue pencil covenant territory in order to make the territory reasonable in scope).

Here, "no amount of blue penciling could have addressed the breadth" of the covenant because no words could be struck from the non-nompete that would cure its defect. *See Technology Partners, Inc. v. Hart*, 298 Fed. Appx. 238, 244 (4th Cir. 2008); *Whittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989) ("The courts will not rewrite a [noncompetition] contract if it is too broad but will simply not enforce it"); *Henley*

*Paper Co. v. McAllister,* 253 N.C. 529, 535, 117 S.E.2d 431, 434-35 (1960) (noting that in North Carolina, courts may not blue pencil covenants, but that they "must stand or fall integrally")

2. *The overbroad provision prohibiting contact with customers with whom former employee had no interaction is unenforceable.* The second provision quoted above purports to prohibit former employees of Latino from "provid[ing] services that are competitive with the services offered by [Latino] to <u>any customer [Latino] has done business with</u> during the twelve months preceding the termination of Employee's employment" "regardless of geographic location." (Exh. A to Complaint, ¶ V.B) (emphasis added). This provision is invalid because its applicability is not restricted to customers with whom the former employer actually had interaction or contacts.

It is black letter law in North Carolina that "a client-based limitation cannot extend beyond contacts made during the period of the employee's employment." *Farr Assocs., Inc. v. Baskin,* 138 N.C. App. 276, 278, 530 S.E.2d 878, 880 (2000) (invalidating non-compete provision that prohibits contact with any "current client or customer of the Company" or persons who were clients "during the two (2) year period immediately preceding the termination date"); *MJM Investigations, Inc. v. Sjostedt*, 2010 N.C. App. LEXIS 1280, at *9-10 (reversing preliminary injunction when the "agreement clearly extends the non-solicitation clause to cover…[clients] with which Defendants had never made contact."); *Medical Staffing Network, Inc. v. Ridgway,* 194 N.C. App. 649, 657, 670 S.E.2d 321, 328 (2009) (<u>reversing trial court's</u> enforcement of non-compete that prohibits employee from "soliciting the business of any [client] which . . . includes clients . . . with whom [employee] would not have had contact."); *CNC/Access, Inc. v. Scruggs,* 2006 NCBC 20, ¶ 37 (2006) (granting summary judgment in favor of defendant when 180-day covenant "restrict[ed] the former CNC employees from providing

services to any client, regardless of whether the employee actually provided services to that client during their time at CNC.") (emphasis in original). Thus, pursuant to long-standing, well-established North Carolina law, the second provision is also invalid and unenforceable.[2]

Because Norsan's tortious interference with contract claim relies upon an invalid, unenforceable contract, it cannot be sustained and must be dismissed. *See Beck, supra* (tortious interference claim requires "valid" contract).

> B. The Complaint admits that Norsan's alleged interference was "justified or privileged," which furnishes a separate and independent basis for dismissal of Latino's claim.

Latino admits in its Complaint that at least one of Norsan's purposes in hiring the former employees was "advancing [Norsan's] own interest[s]." (Compl. ¶ 17). This admission negates Latino's tortious interference claim by acknowledging that Norsan acted with a proper, competitive purpose as a matter of law. The doctrine of privilege or justification therefore protects Norsan's decisions to hire and retain the former employees, and provides a separate and independent basis for immediate dismissal of Latino's claims.

As the North Carolina Court of Appeals has explained, "[a] motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). Specifically, "[n]umerous authorities have recognized that competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Id.* (emphasis added). It is thus fatal to Latino's claim that at least one of Norsan's purposes in hiring Latino's former employees was alleged to be "advancing [Norsan's] own interest." (Compl. ¶ 17, emphasis

---

[2] For the same reasons set forth above, blue-penciling is not available to modify these provisions, which therefore fail in their entirety. *See, e.g. Whittaker General, supra.*

added). That allegation alone is sufficient to render Latino's claim "not actionable." *See Hooks,* 322 N.C. at 221, 367 S.E.2d at 650.

Here, *Hooks* is directly on point and requires dismissal of the Complaint. In *Hooks,* the defendant offered jobs to nineteen employees of the plaintiff, each of whom had executed a non-compete agreement. *Id.* at 218, 367 S.E.2d at 648. Moreover, the defendant in *Hooks* had "personal knowledge of the contractual relationship" — enforceable non-competition clauses — between the employees and plaintiffs. *Id.* at 219, 367 S.E.2d at 649. Nevertheless, observing that the purpose of the hiring was to develop a particular sales territory for the new employer, the Court refused to recognize the plaintiff's claim for tortious interference with contract. *Id.* at 223, 367 S.E.2d at 651. The Court reasoned that the defendant's conduct could not support a cause of action unless "defendant's only motive is a malicious wish to injure the plaintiff…" *Id.* at 221, 367 S.E.2d at 650 (emphasis added).

Thus, even if Latino had alleged (which it did not) that Norsan actively recruited Latino's employees, and even if Latino could demonstrate (which it cannot) the existence of a valid non-compete, "the mere enticement and hiring of an at-will employee by a competing company, absent an improper motive, does not give rise to a tortious interference with a contract claim." *Combs & Assoc. v. Kennedy,* 147 N.C. App. 362, 371, 555 S.E.2d 634, 641 (2001); *See also Hooks,* 322 N.C. at 222, 367 S.E.2d at 651 ("[t]he free enterprise system demands that competing employers be allowed to vie for the services of the 'best and brightest' employees without fear of subsequent litigation for tortious interference."); *Embree Constr. Group, Inc. v. Rafcor, Inc.,* 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) ("Generally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors.")

Accordingly, Latino's claim for tortious interference with contract is properly dismissed. *See Privette v. University of North Carolina,* 96 N.C. App. 124, 134-135, 385 S.E.2d 185, 191 (1989) (dismissing tortious interference claim when "complaint on its face admits that [defendants] had a proper motive for their actions").

      C.      <u>Latino's unfair trade practices claim should also be dismissed</u>.

Latino's claim pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") fails for the same reasons as its tortious interference claim. The UDTPA declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1 (a). "The determination as to whether an act is unfair or deceptive is a question of law for the court." *Business Cabling, Inc. v. Yokeley*, 182 N.C. App. 657, 663 (2007) *citing Dalton v. Camp*, 353 N.C. 647, 656-57, 548 S.E.2d 704, 711 (2001) (internal citations and quotation omitted). Latino fails to allege that Norsan engaged in any unfair or deceptive trade practice.

"A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive…. Moreover, <u>some type of egregious or aggravating circumstances must be alleged and proved before the Act's provisions may take effect</u>." *Id.* (emphasis in original). Latino has alleged no deception or misrepresentation by Norsan. Any "unfair" activity arises solely out of the same facts that are alleged to give rise to the tortious interference claim. However, as set forth above, no valid contract or covenant prohibited Norsan or any of the employees it hired from competing in the Spanish Language newspaper market. Further, even if such covenants were valid, there is no allegation Norsan knew of them at the time of hiring. Finally, even if Norsan knew about valid non-competes that may affect new employees, Norsan

enjoys a privilege to hire employees to compete in the marketplace for its own benefit. (*See supra,* section II.A. and II.B.).

Thus, because Latino's UDTPA claim rests entirely on the allegation of tortious interference with contract, the UDTPA claim must also be dismissed. *Combs & Assoc. v. Kennedy*, 147 N.C. App. 362, 374, 555 S.E.2d 634, 642 (2001) (dismissing unfair and deceptive trade practices claim when "plaintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its [other claims] . . . [and] [h]aving determined that the trial court properly granted summary judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists").

## CONCLUSION

For these reasons, Norsan requests that the Court dismiss Latino's Complaint in its entirety.

This 2nd day of September, 2011.

              s/ Kate E. Payerle
              Robert W. Fuller
              N.C. Bar No. 10887
              rfuller@rbh.com

              Kate E. Payerle
              N.C. Bar No. 36987
              kpayerle@rbh.com

              ROBINSON BRADSHAW & HINSON, P.A.
              101 North Tryon Street, Suite 1900
              Charlotte, North Carolina 28246
              Telephone: 704.377.2536
              Facsimile: 704.378.4000

              *Attorneys for Defendant/Counterclaim Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Richard L. Rainey
Womble, Carlyle, Sandridge & Rice
3500 One Wells Fargo Center
301 S. College Street
Charlotte, NC 28208
Email: rrainey@wcsr.com

This 2nd day of September, 2011.

    s/ Kate E. Payerle
Robert W. Fuller
N.C. Bar No. 10887
rfuller@rbh.com

Kate E. Payerle
N.C. Bar No. 36987
kpayerle@rbh.com

Attorneys for Defendant/Counterclaim Plaintiff

ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000